# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

3/7/2013

RE: IVAN ORTIZ, JR. VS. PA STATE ATTORNEY GENERAL, ETAL
   CA No. 12-7166

# NOTICE

Enclosed herewith please find a copy of the Report and Recommendation filed by United States Magistrate Judge Wells, on this date in the above captioned matter. You are hereby notified that within fourteen (14) days from the date of service of this Notice of the filing of the Report and Recommendation of the United States Magistrate Judge, any party may file (in duplicate) with the clerk and serve upon all other parties written objections thereto (See Local Civil Rule 72.1 IV (b)). **Failure of a party to file timely objections to the Report & Recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court Judge.**

In accordance with 28 U.S.C. §636(b)(1)(B), the judge to whom the case is assigned will make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The judge may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge, receive further evidence or recommit the matter to the magistrate judge with instructions.

Where the magistrate judge has been appointed as special master under F.R.Civ.P 53, the procedure under that rule shall be followed.

MICHAEL E. KUNZ
Clerk of Court

By: LINDA V. JERRY
, Deputy Clerk

cc: Courtroom Deputy to Judge Robreno
   Ortiz
   Hobart

civ623.frm
(11/07)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IVAN ORTIZ, JR. | : | CIVIL ACTION |
| v. | : | |
| BRIAN COLEMAN, *et al.* | : | NO. 12-7166 |

## ORDER

**AND NOW**, this      day of      , 2013, upon consideration of the Petition for Writ of Habeas Corpus, inclusive of all exhibits thereto, the Commonwealth's Answer, inclusive of all exhibits thereto, the other documents filed by the parties, the state court record, and after review of the Report and Recommendation of Chief United States Magistrate Judge Carol Sandra Moore Wells, is hereby **ORDERED** that:

1. The Report and Recommendation is **APPROVED AND ADOPTED**;

2. The Petition for a Writ of Habeas Corpus is **DENIED**, without an evidentiary hearing; and

3. Petitioner has neither shown a denial of federal constitutional right, nor established that reasonable jurists would disagree with this court's disposition of his sole claim. Consequently, a certificate of appealability is **DENIED**.

**IT IS SO ORDERED.**

                                                  **BY THE COURT:**

                                                  _____
                                                  EDUARD C. ROBRENO, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IVAN ORTIZ, JR. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BRIAN COLEMAN, *et al.* | : | NO. 12-7166 |

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS
CHEF UNITED STATES MAGISTRATE JUDGE                              March 6, 2013

Presently before the court is a counseled Petition for a Writ of Habeas Corpus filed by Ivan Ortiz, Jr. ("Petitioner"), pursuant to 28 U.S.C. § 2254. Petitioner is a state prisoner serving a six (6) to eight (8) year term of incarceration at the State Correctional Institution-Fayette located in Labelle, Pennsylvania. Petitioner seeks habeas relief based on one claim of ineffective assistance of counsel. The Honorable Eduardo C. Robreno referred this matter to the undersigned for preparation of a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that the Habeas Petition be DENIED, without an evidentiary hearing.

### I. FACTUAL AND PROCEDURAL HISTORY[1]

. The facts which led to Petitioner's conviction are the following:

> Officer Christopher Dinger, of the Reading Police Department (Officer Dinger), was assigned to the night platoon in the City of Reading, Berks County, on February 8, 2007. At approximately 12:15 a.m., Officer Dinger's duties took him to the south side of the city, specifically to the 10th and South Playground, in order to perform a playground check. Pursuant to the Reading City Code, playgrounds in the city are closed from dusk until dawn; there are [supposed to be] posted signs indicating this rule at each playground. . . .

---

[1] The facts set forth in this background and procedural history were gleaned from Petitioner's Habeas Corpus Petition, his Memorandum of Law, inclusive of all exhibits attached thereto, the Commonwealth's Answer, the Memorandum in Support of its Answer, inclusive of all exhibits attached thereto, and the state court record.

Once Officer Dinger arrived at the playground, the officer observed a white Oldsmobile Alero parked in the playground parking lot. There were four occupants in the vehicle.

Upon seeing the occupants, Officer Dinger illuminated the car with his overhead spotlight, approached the vehicle, and asked the occupants for identification. Officer Dinger also called for police back up. All of the occupants – including [Petitioner] (who was seated in the front passenger seat) – complied with Officer Dinger's request and gave Officer Dinger their identification. . . .

The officer asked the driver for consent to search the vehicle. The driver granted Officer Dinger permission to search the vehicle. Officer Dinger then asked everyone to exit the vehicle for officer safety, while Officer Dinger performed the vehicle search. . . .

During Officer Dinger's search of the vehicle, [Petitioner] appeared very nervous and began pacing and fidgeting. [Petitioner] also removed himself from the group, out of Officer Dinger's view.

Based on [Petitioner's] actions and the surrounding circumstances – such as the lighting, time of night, and neighborhood, Officer Dinger decided to pat [Petitioner] down for weapons. The pat-down revealed two bulging plastic bags, filled with "nickel" bags of suspected marijuana and one additional bag of suspected marijuana. The bags were later confirmed to contain 22.56 grams of marijuana. . . .

[Petitioner] was arrested, and incident to the arrest, Officer Dinger recovered a cell phone and a Lorcin .380 caliber, semi-automatic pistol from [Petitioner's] waistband. The gun was loaded and had one bullet in the chamber and four live rounds inside the magazine. The pistol's serial numbers were ground down, making the numbers unreadable. At the time of the incident, [Petitioner] was statutorily ineligible to carry a handgun.

When Officer Dinger finally searched the vehicle, he did not find anything that could have been used as drug paraphernalia, and he did not smell any burnt marijuana. However, on cross-examination, Officer Dinger testified that there may have been some "roaches," or remnants of a marijuana cigar or cigarette, recovered from the rear of the car and some cigar tobacco on the floor of the car. Cigar tobacco is often associated with marijuana smoking because some people empty cigars of the tobacco and fill the cigars with marijuana in order to smoke the marijuana.

Criminal Investigator John C. Lackner, of the Reading Police Department (Investigator Lackner), was permitted to testify as an expert in the field of narcotics packaging, distribution, delivery, and the drug trade in Reading, Pennsylvania. Investigator Lackner opined that the 24 heat-sealed packets of marijuana

2

> recovered from [Petitioner] were possessed for the purpose of distribution and not for personal use. According to Investigator Lackner, the amount of marijuana, the manner of packaging, and the absence of personal use paraphernalia, such as rolling papers or a pipe, were all indicative of [Petitioner's] intent to distribute the drugs, rather than use them.
>     [Petitioner], after a colloquy, testified at trial. [Petitioner] testified that earlier in the evening he had purchased $35.00 worth of marijuana and then he and the three other occupants of the car smoked at least three bags of marijuana, [Petitioner] further testified that they smoked the marijuana by emptying cigars of their tobacco, filling the cigars with marijuana, and smoking the marijuana-filled cigar. [Petitioner] also testified that Officer Dinger recovered at least three roaches from the car's back seat.

*Commonwealth v. Ortiz*, No. 2118 MDA 2010, slip op. at 1-3 (Pa. Super. Ct. Mar. 9, 2012) ("2012 Super. Ct. Op.") (quoting Trial Court Opinion, 2/15/08 at 2-3).

On November 19, 2007, the trial court sentenced Petitioner to a term of incarceration of six (6) to eight (8) years, to be followed by five (5) years of probation. Answer at 2. Petitioner appealed and the Pennsylvania Superior Court affirmed on December 19, 2008. *Id.* The Pennsylvania Supreme Court denied a petition for allowance of appeal ("*allocatur*") on April 17, 2009. *Id.* Petitioner did not seek *certiorari* in the U.S. Supreme Court.

On September 11, 2009, Petitioner filed a timely petition for state collateral relief, pursuant to the Post Conviction Relief Act, ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-46. Answer at 2. Counsel was appointed and, on November 15, 2010, filed a no merit letter, seeking to withdraw as counsel, pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Cr. 1988) (*en banc*). Answer at 2. Counsel's request was granted on November 16, 2010 and the PCRA petition was dismissed on December 3, 2010. *Id.* Petitioner subsequently appealed and, on March 9, 2012, the Superior

3

Court affirmed the denial of PCRA relief.[2] *Id.* at 3. The Pennsylvania Supreme Court denied *allocatur* on August 21, 2012. *Id.* Petitioner did not seek *certiorari* in the U.S. Supreme Court.

On December 6, 2012, Petitioner filed the instant habeas petition, alleging that trial counsel was ineffective for failing to investigate whether the 10th and South Playground had posted signs announcing no trespassing and the closing time for the playground. Petition at 6.[3] The Commonwealth responds that this claim lacks merit. Memorandum in Support of Commonwealth's Answer to the Petition for Writ of Habeas Corpus ("Comm. Mem.") at 4-7. This court agrees.

## II. DISCUSSION

### A. The AEDPA Standard of Review

Any claims adjudicated by a state court must be considered under the deferential standard of review established by AEDPA,[4] which provides that this court cannot grant habeas relief on a claim unless the state court's adjudication of it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). The habeas statute also provides that any findings of fact made by the state court must be presumed to be correct; Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

---

[2] On PCRA appeal, Petitioner claimed, *inter alia*, that trial counsel was ineffective for failing to investigate whether the 10th and South Playground had posted signs regarding the playground's closing time and warning persons not to trespass. 2012 Super. Ct. Op. at 5.
[3] For the Habeas Petition, which was originally filed in the Middle District of Pennsylvania, the court will use the pagination on the form of petition that was filed in the Middle District.
[4] AEDPA is the Antiterrorism and Effective Death Penalty Act of 1996.

4

A state court's adjudication of a claim is contrary to U.S. Supreme Court precedent if the state court has applied a rule that contradicts the governing law set forth in Supreme Court precedent or if the state court confronts a set of facts which are materially indistinguishable from a decision of the Supreme Court and the state court arrives at a different result from the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). When determining whether a state court's decision was contrary to U.S. Supreme Court precedent, the habeas court should not be quick to attribute error. *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*). Instead, state court decisions should be "given the benefit of the doubt." *Id.* In this regard, it is not necessary that the state court cite the governing Supreme Court precedent or even be aware of the governing Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*). All that is required is that "neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent. *Id.*

If, however, the state court does correctly identify the governing U.S. Supreme Court precedent, unreasonable application analysis, rather than contrary analysis, is appropriate. *Williams*, 529 U.S. at 406. A state court decision constitutes an unreasonable application of Supreme Court precedent if the state court correctly identifies the governing legal rule but applies it unreasonably to the facts of the petitioner's case. *Id.* at 407-08. In making the unreasonable application determination, the habeas court must ask whether the state court's application of Supreme Court precedent was objectively unreasonable. *Id.* at 409. The habeas court may not grant relief simply because it believes the state court's adjudication of the petitioner's claim was incorrect. *Id.* at 411. Rather, the habeas court must be convinced that the state court's adjudication of the claim was objectively unreasonable. *Id.* In doing so, the habeas court is limited to considering the factual record that was before the state court when it ruled,

5

*Cullen v. Pinholster*, 131 S. Ct. 1388, 1400 (2011), and the relevant U.S. Supreme Court precedent that had been decided by the date of the state court's decision. *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011). Finally, when deciding whether a state court's application of U.S. Supreme Court precedent was reasonable, it is permissible to consider the decisions of lower federal courts which have applied clearly established Supreme Court precedent. *See Fischetti v. Johnson*, 384 F.3d 140, 149 (3d Cir. 2004). However, the § 2254(d)(1) bar to habeas relief cannot be surmounted solely based upon lower federal court precedent; U.S. Supreme Court precedent must be the authority. *Renico v. Lett*, 130 S. Ct. 1855, 1865-66 (2010).

The Supreme Court, addressing AEDPA's factual review provisions in *Miller-El v. Cockerell*, 537 U.S. 322 (2003), interpreted § 2254(d)(2) to mean that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Id.* at 340. A clear example of an unreasonable factual determination occurs where the state court erroneously finds a fact that lacks any support in the record. *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). In that extreme circumstance, the presumption of correctness under § 2254(e)(1) is also clearly and convincingly rebutted. *Id.* If the state court's decision based on a factual determination is unreasonable in light of the evidence presented in the state court proceeding, habeas relief is not barred by § 2254(d)(2).[5] *Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir. 2004).

---

[5] Within the overarching standard of § 2254(d)(2), a petitioner may attack specific factual determinations made by the state court that are subsidiary to the ultimate decision. *Lambert*, 387 F.3d at 235. Here, § 2254(e)(1) instructs that the state court's factual determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence. *Id.* A petitioner may develop clear and convincing evidence by way of a hearing in federal court, if he satisfies the prerequisites for that hearing found in 28 U.S.C. § 2254(e)(2). *Lambert*, 387 F.3d at 235. In the final analysis, even if a state court's individual factual determinations are overturned, the remaining findings must still be weighed under the overarching standard of § 2254(d)(2). *Lambert*, 387 F.3d at 235-36.

## B. Ineffective Assistance of Counsel Claim

### 1. Standard of Review

Petitioner has asserted one claim of ineffective assistance of counsel. Such assertions must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In making this determination, the court's scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. The court should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In short, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation omitted).

Second, the petitioner must show that counsel's deficient performance "prejudiced the defense" by "depriv[ing] the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687. That is, the petitioner must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.* at 694, but it is less than a preponderance of the evidence. *Id.* at 693, 694.

If the petitioner fails to satisfy either prong of the *Strickland* test, there is no need to evaluate the other part, as his claim will fail. *Id.* at 697. Further, counsel will not be found ineffective for failing to present an unmeritorious claim or objection. *Johnson v. Tennis*, 549 F.3d 296, 301 (3d Cir. 2008).

7

## 2. Claim One – Trial Counsel was Ineffective for Failing to Investigate Signs at the 10th and South Playground – Lacks Merit

Petitioner claims that trial counsel was ineffective for failing to investigate whether, at the time of his arrest, the 10th and South Playground had signs indicating the closing time and warning persons not to trespass. Petition at 6. The Commonwealth responds that this claim lacks merit. Comm. Mem. at 4-7. This court agrees.

The Superior Court concluded that Petitioner's claim lacked merit. 2012 Super. Ct. Op. at 6-7. Petitioner had argued that there were no signs posted at the 10th and South Playground ("the playground") and that, without any signs, Officer Dinger lacked reasonable suspicion to investigate the car that Petitioner was sitting in at the time he came to the playground. *Id.* The Superior Court concluded that the lack of signs was irrelevant to the existence of Officer Dinger's reasonable suspicion, because the Reading City Code prohibited anyone from entering the playground at 12:15 a.m. *Id.* at 7. It was the Code and the time of day that provided Officer Dinger reasonable suspicion to investigate the car. *Id.*

The Superior Court resolved Petitioner's ineffective assistance of counsel claim by finding that the evidence counsel failed to pursue would not have impacted any suppression question. This is a reasonable application of the *Strickland* standard, because the Third Circuit has found that counsel cannot be ineffective for failing to raise a futile claim. *See Johnson*, 549 F.3d at 301. The question remains whether the state court reasonably concluded that the evidence counsel failed to investigate was irrelevant to the existence of reasonable suspicion.

In order to justify a brief, investigatory *Terry*[6] stop, like the one Petitioner challenges herein, the record must reveal "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981).

---

[6] *Terry v. Ohio*, 392 U.S. 1 (1968).

8

Whether the requisite manifestation exists must be evaluated by the totality of the circumstances. *Id.* The requisite evidentiary justification for a *Terry* stop is termed "reasonable suspicion." *See United States v. Arvizu*, 534 U.S. 266, 273 (2002). In determining whether there is reasonable suspicion, a police officer is entitled to "draw on [his] own experience and special training to make inferences and deductions about the cumulative information available to [him] that 'might well elude an untrained person.'" *Id.* (quoting *Cortez*, 449 U.S. at 418). While the police officer may not rely upon a mere "hunch" to justify a *Terry* stop, reasonable suspicion is less onerous than the probable cause standard, which is itself less demanding that the preponderance of the evidence standard. *Id.* (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

At Petitioner's suppression hearing, Officer Dinger testified that he went to the playground on February 8, 2007, around midnight. (N.T. 5/18/07 at 5). It was part of his patrol duties to enforce the municipal ordinance barring entry into parks between dusk and dawn.[7] *Id.* When he arrived at the playground, Officer Dinger saw a car, with four occupants, sitting in the playground parking lot. *Id.* at 6. Petitioner was occupying the car's front passenger seat. *Id.* at 7. Officer Dinger approached the car and asked all the occupants for identification, which all of the occupants provided. *Id.* at 7. Thereafter, other events transpired, which are not relevant to the question of whether Officer Dinger had reasonable suspicion to investigate the car.[8]

Based on the record before the Superior Court, it was reasonable to conclude that the existence or non-existence of signs at the playground would not have affected the determination of whether Officer Dinger had reasonable suspicion to investigate the car. Officer Dinger knew that a municipal ordinance barred the car from being inside the playground after dusk and it was

---

[7] Officer Dinger testified that, on February 8, 2007, there were signs posted at the playground informing the public that the playground was closed from dusk to dawn. (N.T. 5/18/07 at 5).

[8] Petitioner does not challenge Officer Dinger's subsequent *Terry* frisk, which uncovered marijuana inside Petitioner's coat, nor his arrest by Officer Dinger and Officer Dinger's search of him incident to arrest, which uncovered the handgun he was statutorily barred from possessing.

9

well after dusk when he saw the car. (N.T. 5/18/07 at 5). Hence, he did have reasonable suspicion that the car and its occupants were violating the municipal ordinance. This justifies his *Terry* stop. *See Cortez*, 449 U.S. at 417-18. Petitioner's counsel cannot be deemed ineffective for failing to raise a futile claim. *Johnson*, 549 F.3d at 301. Therefore, Petitioner's claim lacks merit.

### III. CONCLUSION

Petitioner's claim lacks merit under the appropriate standard of review. Reasonable jurists would not debate this court's disposition of his claim; therefore a certificate of appealability should not issue. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, I make the following:

### RECOMMENDATION

**AND NOW**, this 6th day of March, 2013, for the reasons contained in the preceding Report, it is hereby **RECOMMENDED** that Petitioner's claim be **DENIED**, without an evidentiary hearing. Petitioner has neither demonstrated that any reasonable jurist could find this court's ruling debatable, nor shown denial of any federal constitutional right; hence, there is no probable cause to issue a certificate of appealabilty.

Petitioner may file objections to this Report and Recommendation within fourteen (14) days of being served with a copy of it. *See* Local R. Civ. P. 72.1(IV). Failure to file timely objections may constitute a waiver of any appellate rights.

It be so **ORDERED**.

*Carol S. Wells*
CAROL SANDRA MOORE WELLS
Chief United States Magistrate Judge